UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SM FINANCIAL SERVICES CORPORATION, as assignee of NEIGHBORS GP, LLC et al.<br><br>        *Plaintiffs,*<br>v.<br><br>HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company, d/b/a BLUE CROSS BLUE SHIELD OF TEXAS, *et al.*<br><br>        *Defendants.* | Civil Action No. 3:20-cv-01885-M<br>(consolidated with Case No. 3:20-cv-2017-X) |

**THIRD CONSOLIDATED AND AMENDED COMPLAINT**

Plaintiffs SM Financial Services Corporation, as assignee of Neighbors GP, LLC ("**SMF**") and SM Medical Holdings Corporation, as assignee of NEC Amarillo Emergency Center, LP, NEC Beaumont Emergency Center, LP, NEC Brownsville Emergency Center, LP, NEC Harlingen Emergency Center, LP, NEC Lubbock Emergency Center, LP, NEC McAllen Emergency Center, LP, NEC Orange Emergency Center, LP, and NEC Port Arthur Emergency Center, LP ("**SMM**") and SM Physician & Emergency Centers Holding Corporation, as assignee of NEC Yorktown Emergency Center, LP, NEC Midland Emergency Center, LP, NEC Odessa Emergency Center, LP, NEC Texarkana Emergency Center, LP, NEC Paris Emergency Center, LP, NEC Mueller Emergency Center, LP, NEC Eastside Emergency Center, LP (DBA NEC Edgemere Emergency Center, LP), and Neighbors Physician Group, PLLC ("**SMP**") state their complaint against the Defendants Health Care Service Corporation, a Mutual Legal Reserve Company, d/b/a Blue Cross Blue

1

**Exhibit A**

Shield of Texas ("**BCBS of Texas**") as well as Blue Cross Blue Shield of Illinois; Blue Cross Blue Shield of New Mexico; Blue Cross Blue Shield of Oklahoma (together with BCBS of Texas shall be referred collectively as "**BCBS of Texas Affiliates**"); as well as Blue Cross of California; Rocky Mountain Hospital and Medical Service, Inc.; Anthem Health Plans, Inc. ; Anthem Insurance Companies, Inc.; Anthem Health Plans of Kentucky, Inc.; Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.; Community Insurance Company; Anthem Health Plans of Virginia, Inc.; HealthKeepers, Inc.; Blue Cross Blue Shield of Alabama; Blue Cross Blue Shield of Arizona; USAble Mutual Insurance Company d/b/a Arkansas Blue Cross and Blue Shield; Blue Cross Blue Shield of California; Blue Cross Blue Shield of Central New York; Highmark BCBSD, Inc. d/b/a Highmark Blue Cross Blue Shield Delaware; Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue; Blue Cross Blue Shield of Georgia; Blue Cross Blue Shield of Hawaii; Blue Cross of Idaho Health Service, Inc.; Blue Cross Blue Shield of Kansas; Blue Cross Blue Shield of Kansas City; Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana; Blue Cross Blue Shield of Massachusetts; Blue Cross Blue Shield of Michigan; BCBSM, Inc., d/b/a Blue Cross and Blue Shield of Minnesota; Blue Cross & Blue Shield of Mississippi; RightCHOICE Managed Care, Inc.; Healthy Alliance Life Insurance Company; HMO Missouri, Inc.; HMO Missouri, Inc. RIT; Blue Cross Blue Shield of Nebraska; Blue Cross Blue Shield of New Mexico; Blue Cross and Blue Shield of North Carolina; Blue Cross Blue Shield of North Dakota; Blue Cross Blue Shield of Northeastern New York; Blue Cross Blue Shield of Northeastern Pennsylvania; Blue Cross Blue Shield of Puerto Rico d/b/a Triple-S Salud; Blue Cross & Blue Shield of

Rhode Island; Blue Cross & Blue Shield of South Carolina; Blue Cross Blue Shield of Tennessee; Blue Cross Blue Shield of Vermont; BlueCross BlueShield of Western New York; Blue Cross Blue Shield of Wisconsin; Blue Cross Blue Shield of Wyoming; Blue Advantage Administrators of Arkansas; Blue Cross, through CanAssistance; Capital BlueCross; Carefirst Administrators; Empire Blue Cross Blue Shield of New York; Highmark Blue Cross Blue Shield; Highmark, Inc. d/b/a Highmark Blue Cross Blue Shield Pennsylvania; Highmark West Virginia, Inc. d/b/a Highmark Blue Cross Blue Shield West Virginia; Blue Cross Blue Shield of Delaware; Independence Blue Cross Blue Shield; NEIBP affiliated with Blue Cross Blue Shield Blue Card PPO; Premera Blue Cross Blue Shield of Alaska; Premera Blue Cross Blue Shield of Washington; Regence BlueCross BlueShield of Oregon; Regence BlueCross BlueShield of Utah; Regence BlueShield of Washington; Wellmark Blue Cross and Blue Shield of Iowa ; Wellmark Blue Cross and Blue Shield; and Wellmark Blue Cross and Blue Shield of South Dakota (collectively referred to as "**BCBS Non-Affiliates**") ("BCBS of Texas," "BCBS of Texas Affiliates," and "BCBS Non-Affiliates" shall collectively be referred to as the "**Defendant**" or "**BCBS**") as follows:

## PARTIES

1. SMF, SMM and SMP are corporations incorporated in the State of New Jersey and are citizens of the State of New Jersey.

2. SMF, SMM and SMP's principal place of business is in Oldwick New Jersey, with an address at P.O. Box 530, 49 Old Turnpike Road, Oldwick, New Jersey 08858.

3. Defendant BCBS of Texas (i.e., Health Care Service Corporation, a Mutual Legal Reserve Company, d/b/a/ Blue Cross Blue Shield of Texas) is an unincorporated division of Health Care Service Corporation, an Illinois corporation that is headquartered in Chicago, Illinois. Health Care Service Corporation is a managed care company; its Blue Cross Blue Shield of Texas division issues, and provides administrative services to, health benefit plans in Texas. BCBS of Texas' main office is in Richardson, Texas.

4. Defendants BCBS Texas Affiliates are health insurance companies affiliated with BCBS of Texas.

5. Defendants BCBS Non-Affiliates are insurance companies which are not affiliated with BCBS of Texas and the BCBS of Texas Affiliates.

## JURISDICTION

6. Federal jurisdiction is appropriate pursuant to 28 U.S.C. §1332(a)(1) because this dispute is between an entity of New Jersey and an entity of Texas. Additionally, the amount in controversy exceeds $75,000.

## DIVERSITY

7. BCBS of Texas is a corporation and citizen of Texas.

8. SMF, SMM and SMP are corporations incorporated in the State of New Jersey and are citizens of New Jersey.

9. With the exception of BCBS of Texas, BCBS of Texas Affiliates are corporations and citizens of states other than Texas and New Jersey.

10. BCBS Non-Affiliates are corporations and citizens of states other than Texas and New Jersey.

11. Accordingly, there is complete diversity between SMF, SMM and SMP, each citizens of New Jersey, and the BCBS Defendants, which are citizens of either Texas or other states, under 28 U.S.C. §1332.

**CONSOLIDATION OF ACTIONS**

12. On August 30, 2019, SMF filed an action seeking damages of not less than approximately $2,365,282.90 against BCBS in the U.S. District Court of New Jersey as Civil Action No. 3:19-cv-17497. The SMF action was transferred per the New Jersey court's Order on July 17, 2020, as Civil Action No. 3:20-cv-01885-M to this United States District Court for the Northern District of Texas ("**SM Financial I**").

13. On July 30, 2020, SMM filed an action seeking damages of not less than approximately $24,251,486.84 against BCBS before the United States District Court for the District of Texas as Civil Action No. 3:20-cv-01017-X ("**SM Financial II**")

14. On August 28, 2020, this Court entered an Order in SM Financial II (Civil Action No. 3:20-cv-02017-X) which, inter alia, consolidated SM Financial II with SM Financial I.

**FACTS**

**A.    Background**

15. Neighbors Legacy Holdings, Inc. and certain of its affiliates and subsidiaries (the "**Debtor**"), filed a voluntary petition under chapter 11 of the Bankruptcy Code on July 1, 2018 in the case captioned In re Neighbors Legacy Holdings, Inc., et al., pending before the United States Bankruptcy Court for the Southern District of Texas (Houston Division) (Case No. 18-33836 (MI)) (the "**Bankruptcy Proceeding**").

5

16. As part of that chapter 11 Bankruptcy Proceeding, Tensie Axton was appointed Liquidating Trustee (the "**Liquidating Trustee**") of the liquidating trust created and governed by the Liquidating Trust Agreement, dated as of April 8, 2019, executed in connection with the *Order Approving the Debtors' Second Amended Disclosure Statement and Confirming Debtors' First Amended Joint Plan of Liquidation of Neighbors Legacy Holdings, Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code*, filed in the Bankruptcy Proceeding.

17. Thereafter, the Liquidating Trustee sold certain healthcare accounts receivable (collectively, the "**Healthcare Accounts Receivable**") of freestanding emergency care facilities to each SMF, SMM and SMP.

18. Specifically, in or about April 2019, and pursuant to a bill of sale, the Liquidating Trustee sold to SMF certain Healthcare Accounts Receivable of NEC Amarillo South Emergency Center, LP, NEC College Station Emergency Center, LP; NEC Greeley Emergency Center, LP; NEC Kerrville Emergency Center, LP; NEC Lakeline Emergency Center, LP; NEC Longview Emergency Center LP; NEC Lufkin Emergency Center, LP; NEC San Angelo Emergency Center, LP; NEC Texas City Emergency Center, LP; NEC Tyler Emergency Center, LP; NEC West Warwick Emergency Center, LP; NEC Wichita Falls Emergency Center, LP; and NEC Zaragoza Emergency Center, LP (collectively, the "**SMF Emergency Centers**").

19. Further, on or about June 1, 2020, and pursuant to a bill of sale, the Liquidating Trustee sold to SMM certain other Healthcare Accounts Receivable of NEC Amarillo Emergency Center, LP; NEC Beaumont Emergency Center, LP; NEC

6

Brownsville Emergency Center, LP; NEC Harlingen Emergency Center, LP; NEC Lubbock Emergency Center, LP; NEC McAllen Emergency Center, LP; NEC Orange Emergency Center, LP; and NEC Port Arthur Emergency Center, LP (collectively, the "**SMM Emergency Centers**").

20. Further, in or about August 2021, and pursuant to a bill of sale, the Liquidating Trustee sold to SMP certain other Healthcare Accounts Receivable of NEC Yorktown Emergency Center, LP, NEC Midland Emergency Center, LP, NEC Odessa Emergency Center, LP, NEC Texarkana Emergency Center, LP, NEC Paris Emergency Center, LP, NEC Mueller Emergency Center, LP, NEC Eastside Emergency Center, LP (DBA NEC Edgemere Emergency Center, LP), and Neighbors Physician Group, PLLC (collectively, the "**SMP Emergency Centers**").

**B.  The Emergency Care Centers Must be Reimbursed by BCBS Under Texas Law.**

    **(i)  The Emergency Care Centers are "Free-Standing Emergency Care Facilities" Under Texas Law**

21. The subject Healthcare Accounts Receivable included those accounts receivable due and owing by BCBS in connection with certain emergency room services provided by at least some of the aforementioned emergency centers, to wit, the SMF Emergency Centers, the SMM Emergency Centers and the SMP Emergency Centers.

22. A "Freestanding emergency medical care facility" is defined as "a facility, structurally separate and distinct from a hospital, that receives an individual and provides emergency care…" TEX. HEALTH & SAFETY CODE § 254.001.

7

23. The term "emergency care," as that term is used in TEX. HEALTH & SAFETY CODE § 254.001, has the same meaning as under TEXAS INS. CODE §§ 843.002 and 1301.155 and is defined as meaning "health care services provided in a hospital emergency facility, freestanding emergency medical care facility, or comparable emergency facility to evaluate and stabilize medical conditions of a recent onset and severity, including severe pain, that would lead a prudent layperson possessing an average knowledge of medicine and health to believe that the individual's condition, sickness, or injury is of such a nature that failure to get immediate medical care could: (A) place the individual's health in serious jeopardy; (B) result in serious impairment to bodily functions; (C) result in serious dysfunction of a bodily organ or part; (D) result in serious disfigurement; or (E) for a pregnant woman, result in serious jeopardy to the health of the fetus." TEX. INS. CODE § 843.002; *see also,* TEX. INS. CODE § 1301.155; TEX. HEALTH & SAFETY CODE § 254.001.

24. The SMF Emergency Centers, the SMM Emergency Centers and the SMP Emergency Centers are "free-standing emergency centers" (collectively, the "**FECs**") as that term is defined under Texas law and pursuant to the Texas Freestanding Emergency Care Facility Licensing Act, TEX. HEALTH & SAFETY CODE §254.001.

**(ii)   The FECs Must Be Reimbursed Under "Usual and Customary" Rates**

25. Upon information and belief, BCBS is an insurer under the Texas Insurance Code.

26. The subject FECs are out-of-network providers, which provided emergency care to BCBS' members.

27. As such, pursuant to the Texas Insurance Code and its regulations, Texas law requires BCBS to pay for emergency care provided by out-of-networks, such as the FECs described herein, at the usual and customary rate or at an agreed rate. *See, e.g.,* TEX. INS. CODE §§ 1301.155 (governing preferred provider benefit plans) ("**PPO Plans**"); 1271.155 (governing health maintenance organization plans) ("**HMO Plans**"); 1301.0053 (governing exclusive provider plans) ("**EPO Plans**"); 28 TEX. ADMIN. CODE §§ 3.3708 (governing PPO Plans); 11.1611 (governing HMO Plans); and 3.3725 (governing EPO Plans).

28. For example, with respect to PPO Plans, under TEX. INS. CODE § 1301.155, "[i]f an insured cannot reasonably reach a preferred provider, an insurer shall provide reimbursement for … emergency care services at the usual and customary rate or at an agreed rate at the preferred level of benefits until the insured can reasonably be expected to transfer to a preferred provider:…" TEX. INS. CODE § 1301.155(b). *See also* 28 TEX. ADMIN. CODE § 3.3708(b) (governing PPO Plans).

29. Similarly, with respect to HMO Plans, "[a] health maintenance organization shall pay for emergency care performed by non-network physicians or providers at the usual and customary rate or at an agreed rate." TEX. INS. CODE § 1271.155(a). *See also* 28 TEX. ADMIN. CODE §11.1611(b) (governing HMO Plans).

30. As a further example, for EPO Plans, "[i]f an out-of-network provider provides emergency care as defined by Section 1301.155 to an enrollee in an exclusive provider benefit plan, the issuer of the plan shall reimburse the out-of-network provider at the usual and customary rate or at a rate agreed to by the issuer and the out-of-network

9

provider for the provision of the services and any supply related to those services." TEX. INS. CODE § 1301.0053. *See also,* 28 TEX. ADMIN. CODE § 3.3725 (governing EPO Plans).

31. In addition, "[r]eimbursements of all nonpreferred providers for services that are covered under the health insurance policy are required to be calculated pursuant to an appropriate methodology that: (1) if based upon usual, reasonable, or customary charges, is based on generally accepted industry standards and practices for determining the customary billed charge for a service and that fairly and accurately reflects market rates, including geographic differences in costs; (2) if based on claims data, is based upon sufficient data to constitute a representative and statistically valid sample; (3) is updated no less than once per year; (4) does not use data that is more than three years old; and (5) is consistent with nationally recognized and generally accepted bundling edits and logic." *See* 28 TEX. ADMIN. CODE §§ 3.3708(c) (PPO Plans); 11.1611(f) (HMO Plans); and 3.3725(f) (EPO Plans).

32. With respect to the payment for such services, the Texas Insurance Code requires an insurer to pay a healthcare provider's claim within 30 days of receipt of an electronically submitted clean claim. *See, e.g.,* TEX. INS. CODE §§ 1301.155(c)(1) (PPO Plans); 1271.155(f)(1) (HMO Plans); and 1301.0053(a)(1) (EPO Plans).

33. The Texas Insurance Code also requires an insurer to pay a healthcare provider's claim within 45 days of receipt of a nonelectronic clean claim. *See, e.g.,* TEX. INS. CODE §§ 1301.155(c)(2) (PPO Plans); 1271.155(f)(2) (HMO Plans); and 1301.0053(a)(2) (EPO Plans).

34. A "clean claim" means a claim that complies with Section 1301.131 of the Texas Insurance Code. TEX. INS. CODE § 1301.101.

35. Pursuant to TEX. INS. CODE § 1301.131 "[a] nonelectronic claim by a physician or health care provider, other than an institutional provider, is a 'clean claim' if the claim is submitted using the Centers for Medicare and Medicaid Services Form 1500 or, if adopted by the commissioner by rule, a successor to that form developed by the National Uniform Claim Committee or the committee's successor. An electronic claim by a physician or provider, other than an institutional provider, is a 'clean claim' if the claim is submitted using the Professional 837 (ASC X12N 837) format or, if adopted by the commissioner by rule, a successor to that format adopted by the Centers for Medicare and Medicaid Services or the center's successor." TEX. INS. CODE § 1301.131(a).

36. Further, "[a] nonelectronic claim by an institutional provider is a 'clean claim' if the claim is submitted using the Centers for Medicare and Medicaid Services Form UB-92 or, if adopted by the commissioner by rule, a successor to that form developed by the National Uniform Billing Committee or the committee's successor. An electronic claim by an institutional provider is a 'clean claim' if the claim is submitted using the Institutional 837 (ASC X12N 837) format or, if adopted by the commissioner by rule, a successor to that format adopted by the Centers for Medicare and Medicaid Services or the centers' successor." TEX. INS. CODE § 1301.131(b).

37. This requirement not only applies to participating providers, but also to out-of-network providers of emergency services, such as the FECs at issue here. *See e.g.,* TEX. INS. CODE §§ 843.351, 1301.069.

The FECs, and/or the Plaintiff, have complied with all conditions precedent to bringing this lawsuit, including the exhaustion of their administrative remedies, by, <u>inter alia</u>, having filed appeals on the subject Healthcare Accounts Receivable claims with the Defendant or such claims otherwise having been declined by the Defendant.

38. Attached as **"Exhibit A"** is a schedule of the amounts owed as to each of the BCBS Defendants to SMF, SMM and SMP.

## COUNT I
### (Violation of Texas Insurance Code)

39. SMF, SMM and SMP repeat the allegations of the previous paragraphs as if set forth at length.

40. Upon information and belief, BCBS is an insurer under Texas Insurance Code.

41. The FECs were out-of-network providers, which provided emergency services to BCBS' members.

42. The Texas Insurance Code and regulations therein require BCBS to pay for such emergency care at the usual and customary rate or at an agreed rate.

43. The Texas Insurance Code also requires BCBS to pay for care its insureds receive from an out-of-network provider at the usual and customary rate or an agreed rate when the insured is unable to reach an in-network provider.

44. BCBS failed to fulfill its obligations under the Texas Insurance Code by failing to pay for the emergency care provided by the FECs at the usual and customary rate

12

on the claims that the FECs submitted for the emergency care it provided to the BCBS' members at issue.

45. As such, BCBS has violated Texas Insurance Law, including, inter alia, TEX. INS. CODE §§ 1301.155 (PPO Plans); 1271.155 (HMO Plans); 1301.0053 (EPO Plans); 28 TEX. ADMIN. CODE §§ 3.3708 (PPO Plans); 11.1611 (HMO Plans); and 3.3725 (EPO Plans).

46. As the assignee for the FECs, SMF, SMM and SMP have standing to seek redress for these violations.

47. Accordingly, SMF, SMM and SMP are entitled to recover the difference between the amount BCBS paid and the usual and customary rate for each of the Healthcare Accounts Receivable at issue herein.

## COUNT II
### (Violation of Texas Insurance Code – TEX. INS. CODE §541.060)

48. SMF, SMM and SMP repeat the allegations of the previous paragraphs as if set forth at length.

49. The Texas Insurance Code prohibits an insurer from engaging in an unfair settlement practice "with respect to a claim by an insured or beneficiary." TEX. INS. CODE. § 541.060(a).

50. TEX. INS. CODE § 541.060 lists several such prohibited practices. Such prohibited unfair claim settlement practices include "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of: (A) a claim with respect to which the insurer's liability has become reasonably clear or (B) a claim under one portion of a policy

13

with respect to which the insurer's liability has become reasonably clear to influence the claimant to settle another claim under another portion of the coverage unless payment under one portion of the coverage constitutes evidence of liability under another portion." TEX. INS. CODE § 541.060(a)(2)(A) and (B).

51. Another prohibited unfair claim settlement practice is "refusing to pay a claim without conducting a reasonable investigation with respect to the claim." TEX. INS. CODE § 541.060(a)(7).

52. BCBS failed to comply with the Texas Insurance Code by failing to pay the FECs the usual and customary rate for emergency care provided to the BCBS' insureds and otherwise failing to engage in fair settlement practices as required under TEX. INS. CODE § 541.060.

53. As the assignee for the FECs, SMF, SMM and SMP have standing to seek redress for these violations.

54. Accordingly, SMF, SMM and SMP are entitled to recover, inter alia, the amount of actual damages, plus court costs and reasonable attorney's fees pursuant to TEX. INS. CODE § 541.152.

## COUNT III
### (Violation of Texas Prompt Payment Statutes)

55. SMF, SMM and SMP repeat the allegations of the previous paragraphs as if set forth at length.

56. The Texas Insurance Code requires an insurer to pay a healthcare provider's claim within 30 days of receipt of an electronically submitted clean claim and within 45 days of receipt of a nonelectronically submitted clean claim.

57. This requirement not only applies to participating providers, but also to out-of-network providers of emergency services, such as the FECs at issue herein.

58. Despite the statutory requirements as set forth herein, BCBS failed to pay the subject Healthcare Accounts Receivable claims within the deadlines as set forth under Texas law.

59. As the assignee for the FECs, SMF, SMM and SMP have standing to seek redress for these violations.

60. Accordingly, for all claims payable under the plans it has with its insureds and members, BCBS failed to pay such Healthcare Accounts Receivable claims within the time period as set forth under the aforementioned statutes and is therefore liable to Plaintiff for penalties under, inter alia, TEX. INS. CODE §§ 1301.137 (PPO Plans) and 843.342 (HMO Plans).

## COUNT IV
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

61. SMF, SMM and SMP repeat the allegations of the previous paragraphs as if set forth at length.

62. A covenant of good faith and fair dealing is implied by law in all contracts and agreements.

15

63. As such, BCBS is bound by the covenant of good faith and fair dealing implied by law.

64. By virtue of the aforementioned conduct, including, but not limited to, BCBS' wrongful and intentional withholding of the monies due under the subject Healthcare Accounts Receivable claims, BCBS has breached and continues to breach the implied covenant of good faith and fair dealing.

65. As a direct and proximate cause of BCBS' breach of implied covenant of good faith and fair dealing, SMF, SMM and SMP have and continue to be damaged.

66. As the assignee for the FECs, SMF, SMM and SMP have standing to seek redress for these violations.

## COUNT V
### (Unjust Enrichment)

67. SMF, SMM and SMP repeat the allegations of the previous paragraphs as if set forth at length.

68. BCBS is wrongfully refusing to return or direct to return the sums due to SMF, SMM and SMP.

69. To allow BCBS to retain the monies which is otherwise due and owing to SMF, SMM and SMP would result in BCBS continuing to be unjustly enriched.

70. As a direct and proximate result of BCBS' unjust enrichment, SMF, SMM and SMP have and continue to be damaged.

71. As the assignee for the FECs, SMF, SMM and SMP have standing to seek redress for these violations.

## COUNT VI
### (*Quantum Meruit*)

72. SMF, SMM and SMP repeat the allegations of the previous paragraphs as if set forth at length.

73. BCBS wrongfully refused, and continues to wrongfully refuse, to return or cause the return of the sums due to the FECs and/or to SMF, SMM and SMP.

74. As such, BCBS has wrongfully secured benefits that would be unconscionable for it to retain by refusing and/or underpaying the subject Healthcare Accounts Receivable claims in connection with the services provided by the FECs which were provided to BCBS' insureds and members.

75. BCBS has received substantial sums of money in premium payments from its insureds who have received treatment at the FECs. However, despite receiving those premium payments, and despite the FECs having provided its services to BCBS' members and insureds, BCBS has failed to provide the reimbursements it was required to pay, whether required by statute, contract, Texas state law and/or in equity.

76. By refusing to make such payments, BCBS has been unjustly enriched and received *quantum meruit* for not less than approximately $60,113,240.75 because it received the benefits of the services and failed to make payment for same.

77. As a direct and proximate result of Defendant's unjust enrichment, SMF, SMM and SMP have and continue to be damaged.

78. As the assignee for the FECs, SMF, SMM and SMP have standing to seek redress for these violations.

17

## PRAYER FOR RELIEF

**WHEREFORE**, SMF, SMM and SMP hereby requests the following relief:

A. The difference between the amount BCBS has already paid on the subject claims at issue and the usual and customary rate, and in an amount of not less than approximately $60,113,240.75 as per the **Exhibit "A"** attached;

B. To the extent that such award is not allocable to the individual BCBS defendant entities as per the attached **Exhibit "A"**, then an award against BCBS of Texas in the amount of not less than approximately $60,113,240.75.

C. An award for penalties pursuant to, inter alia, TEX. INS. CODE §§ 1301.137 and 843.342;

D. An award for actual damages, plus court costs and reasonable attorneys' fees pursuant to, inter alia, TEX. INS. CODE § 541.152;

E. Court costs;

F. Pre-judgment and post-judgment interest to the maximum extent permitted by law; and

G. Such other and further relief to which SMF, SMM and/or SMP may be entitled.

Dated:     January ____, 2022

                Respectfully Submitted,

                PADFIELD & STOUT, L.L.P.
                420 Throckmorton Street, Suite 1210
                Fort Worth, Texas 76102
                (817) 338-1616 phone
                (817) 338-1610 fax

                /s/ Matthew B. Fronda
                Mark W. Stout
                State Bar I.D. #24008096
                mstout@padfieldstout.com
                Matthew D. Giadrosich
                State Bar I.D. #24074274
                mdg@padfieldstout.com
                Matthew B. Fronda
                State Bar I.D. #24086264
                mfronda@padfieldstout.com

                *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      The undersigned certifies that on this _____th day of January, 20222, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                /s/ Matthew B. Fronda
                Matthew B. Fronda

|  | SMM | SMF | SMP | SMM, SMF, & SMP TOTALS |
|---|---|---|---|---|
| **BCBS of TX & Affiliates** | **SMM Totals** | **SMF Totals** | **SMP Totals** | **SMM, SMF, & SMP Totals** |
| Blue Cross Blue Shield of Illinois | $625,687.73 | $112,461.11 | $968,015.04 | $1,706,163.88 |
| Blue Cross Blue Shield of New Mexico | $6,286.19 | $8,823.39 | $8,104.94 | $23,214.52 |
| Blue Cross Blue Shield of Oklahoma | $133,394.91 | $10,940.32 | $717,909.91 | $862,245.14 |
| Blue Cross Blue Shield of Texas | $16,444,871.23 | $1,546,034.42 | $21,524,647.43 | $39,515,553.08 |
| Total: | $17,210,240.06 | $1,678,259.24 | $23,218,677.32 | $42,107,176.62 |

|  | SMM | SMF | SMP | SMM, SMF, & SMP TOTALS |
|---|---|---|---|---|
| **BCBS Non Affiliates** | **SMM Totals** | **SMF Totals** | **SMP Totals** | **SMM & SMF Totals** |
| Anthem Health Plans, Inc. |  | $38,335.18 | $3,371,886.44 | $3,410,221.62 |
| Blue Cross Blue Shield of California | $477,089.52 | $72,764.92 |  | $549,854.44 |
| Rocky Mountain Hospital and Medical Services, Inc. | $36,929.16 | $299.09 | $0.00 | $37,228.25 |
| Anthem Insurance Companies, Inc. | $14,480.86 | $0.00 | $0.00 | $14,480.86 |
| Anthem Health Plans of Kentucky, Inc. | $60,991.63 | $2,492.38 | $0.00 | $63,484.01 |
| Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. | $697,922.35 | $47,814.15 | $0.00 | $745,736.50 |
| RightCHOICE Managed Care, Inc.[1] Healthy Alliance Life Insurance Company[1] HMO Missouri, Inc.[1] | $0.00 | $9,291.46 | $0.00 | $9,291.46 |
| Community Insurance Company | $623,118.11 | $44,023.77 | $0.00 | $667,141.88 |
| Anthem Health Plans of Virginia, Inc.[2] HealthKeepers, Inc.[2] | $5,950.64 | $0.00 | $0.00 | $5,950.64 |
| Anthem Health Plans of New Hampshire, Inc. | $0.00 | $5,174.67 | $0.00 | $5,174.67 |
| Blue Cross Blue Shield of Alabama | $217,785.88 | $47,971.74 | $573,718.09 | $839,475.71 |
| Blue Cross Blue Shield of Arizona | $1,843.05 | $982.02 | $75,414.52 | $78,239.59 |
| USAble Mutual Insurance Company d/b/a Arkansas Blue Cross and Blue Shield | $1,722,232.78 | $108,107.88 | $2,950,537.07 | $4,780,877.73 |
| Blue Cross Blue Shield of California | $24,247.13 | $28,828.53 | $120,742.76 | $173,818.42 |
| Blue Cross Blue Shield of Central New York | $4,844.44 | $0.00 | $19,161.38 | $24,005.82 |
| Blue Cross Blue Shield of Delaware | $6,886.72 | $0.00 | $0.00 | $6,886.72 |
| Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue | $95,334.52 | $17,346.52 | $258,880.41 | $371,561.45 |
| Blue Cross Blue Shield of Georgia | $170,829.08 | $18,064.24 | $0.00 | $188,893.32 |
| Blue Cross Blue Shield of Hawaii | $0.00 | $0.00 | $337.00 | $337.00 |
| Blue Cross of Idaho Health Service, Inc. | $223,081.87 | $18,430.20 | $168,020.75 | $409,532.82 |
| Blue Cross and Blue Shield of Kansas |  | $0.00 | $32,873.46 | $32,873.46 |
| Blue Cross Blue Shield of Kansas City | $8,043.45 | $2,877.42 | $55,379.88 | $66,300.75 |
| Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana | $664,166.31 | $30,765.67 | $722,486.83 | $1,417,418.81 |
| Blue Cross Blue Shield of Massachusetts | $0.00 | $0.00 | $9,699.45 | $9,699.45 |
| Blue Cross Blue Shield of Michigan | $0.00 | $0.00 | $262,742.78 | $262,742.78 |
| BCBSM, Inc., d/b/a Blue Cross and Blue Shield of Minnesota | $9,095.89 | $819.00 | $18,624.33 | $28,539.22 |
| Blue Cross & Blue Shield of Mississippi | $6,565.10 | $12,898.54 | $133,842.86 | $153,306.50 |
| Blue Cross Blue Shield of Nebraska | $0.00 | $0.00 | $22,253.67 | $22,253.67 |
| Blue Cross & Blue Shield of North Carolina | $28,757.10 | $5,685.16 | $30,273.92 | $64,716.18 |
| Blue Cross Blue Shield of North Dakota | $2,804.82 | $3,913.63 | $67,850.51 | $74,568.96 |
| Blue Cross Blue Shield of Northeastern New York | $1,827.57 | $0.00 | $25,918.55 | $27,746.12 |
| Blue Cross Blue Shield of Northeastern Pennsylvania | $63,106.28 | $0.00 | $0.00 | $63,106.28 |
| Blue Cross Blue Shield of Puerto Rico d/b/a Triple-S Salud | $0.00 | $0.00 | $6,936.39 | $6,936.39 |
| Blue Cross & Blue Shield of Rhode Island | $0.00 | $0.00 | $3,955.74 | $3,955.74 |
| Blue Cross & Blue Shield of South Carolina | $209,222.18 | $0.00 | $168,842.72 | $378,064.90 |
| Blue Cross Blue Shield of Tennessee | $180,963.04 | $12,237.44 | $583,356.75 | $776,557.23 |
| Blue Cross Blue Shield of Vermont | $0.00 | $0.00 | $15,931.38 | $15,931.38 |
| BlueCross BlueShield of Western New York | $0.00 | $3,076.99 | $0.00 | $3,076.99 |
| Blue Cross Blue Shield of Wisconsin | $4,976.55 | $0.00 | $12,446.11 | $17,422.66 |
| Blue Cross Blue Shield Wyoming | $0.00 | $0.00 | $4,705.78 | $4,705.78 |
| Blue Advantage Administrators of Arkansas | $0.00 | $0.00 | $4,141.48 | $4,141.48 |
| Blue Cross, Through CanAssistance | $0.00 | $0.00 | $637.56 | $637.56 |
| Capital BlueCross | $47,764.96 | $0.00 | $24,659.28 | $72,424.24 |
| Carefirst Administrators | $0.00 | $0.00 | $58,059.07 | $58,059.07 |
| Empire Blue Cross Blue Shield of New York | $16,563.41 | $0.00 | $51,222.97 | $67,786.38 |
| Highmark Blue Cross Blue Shield | $16,388.54 | $14,022.77 | $0.00 | $30,411.31 |
| Highmark BCBSD, Inc. d/b/a Highmark Blue Cross Blue Shield Delaware | $160,202.45 | $1,265.67 | $12,863.29 | $174,331.41 |
| Highmark, Inc. d/b/a Highmark Blue Cross Blue Shield Pennsylvania | $415,626.94 | $54,320.21 | $719,290.66 | $1,189,237.81 |
| Highmark West Virginia d/b/a Highmark Blue Cross Blue Shield West Virginia | $1,400.00 | $0.00 | $0.00 | $1,400.00 |
| Independence Blue Cross Blue Shield | $46,793.04 | $0.00 | $110,858.57 | $157,651.61 |
| NEIBP affiliated with Blue Cross Blue Shield Blue Card PPO | $7,496.52 | $0.00 | $2,368.08 | $9,864.60 |
| Premera Blue Cross Blue Shield of Alaska | $0.00 | $0.00 | $15,862.56 | $15,862.56 |
| Premara Blue Cross Blue Shield of Washington | $0.00 | $0.00 | $39,382.53 | $39,382.53 |
| Regence BlueCross BlueShield of Oregon | $19,984.94 | $14,576.00 | $71,286.83 | $105,847.77 |
| Regence BlueCross BlueShield of Utah | $50,043.80 | $19,883.13 | $17,204.74 | $87,131.67 |
| Regence BlueShield of Washington | $3,032.24 | $0.00 | $28,026.74 | $31,058.98 |
| Wellmark Blue Cross and Blue Shield | $0.00 | $13,530.11 | $0.00 | $13,530.11 |
| Wellmark Blue Cross Blue Shield of South Dakota | $0.00 | $0.00 | $9,458.31 | $9,458.31 |
| Wellmark Blue Cross and Blue Shield of Iowa | $71,200.22 | $5,904.39 | $48,625.96 | $125,730.57 |
| Total: | $6,419,593.09 | $655,702.88 | $10,930,768.16 | $18,006,064.13 |

| | |
|---|---|
| **SMM Grand Total:** | $23,629,833.15 |
| **SMF Grand Total:** | $2,333,962.12 |
| **SMP Grand Total:** | $34,149,445.48 |
| | |
| **SMM, SMF, & SMP GRAND TOTALS** | $60,113,240.75 |

[1] The breakdown of claims between these three (3) entities is still being determined, and a supplemental breakdown of claims will be provided following adequate discovery.
[2] The breakdown of claims between these two (2) entities is still being determined, and a supplemental breakdown of claims will be provided following adequate discovery.



**Exhibit A**